UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WARREN THOMPSON, | ) |
| | ) No. CV-11-3042-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 14, 16. Attorney D. James Tree represents Warren E. Thompson (Plaintiff); Special Assistant United States Attorney Thomas S. Inman represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On August 28, 2006, Plaintiff protectively filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning October 4, 2005. Tr. 14; 119. In his application for benefits, Plaintiff reported that he stopped working due to low back injury, right shoulder injury, depression and hearing loss. Tr. 123. Plaintiff's claim was denied initially

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 72-102. A hearing was held on November 4, 2009, at which Vocational Expert Scott Whitmer, and Plaintiff, who was represented by counsel, testified. Tr. 29-67. ALJ Gene Duncan presided. Tr. 29. The ALJ denied benefits on January 8, 2010. Tr. 14-24. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 47 years old, and lived in a camper on a friend's property in Zillah, Washington. Tr. 34; 36. He graduated from high school and immediately began working in agricultural warehouses. Tr. 49.

In October 2005, he was working at a fruit packing shed as a line mechanic, "taking care of machines and segregating apple boxes," when he hurt his shoulder. Tr. 37-38. He testified that he was off work for five days, he filed a Labor and Industries claim, but when he returned with a doctor's excuse, he was fired. Tr. 38. Plaintiff said that his civil action against his employer was ongoing. Tr. 38-39. He said his shoulder still hurt, but his back pain was worse. Tr. 40. Plaintiff said his daily pain is between a four and six, but on a bad day, the pain is a ten. Tr. 42. He said he can sit for about 45 minutes before he has to stand, and he can stand about 20 to 25 minutes at a time. Tr. 44. Plaintiff testified that on an average day, he spends two to three hours lying down. Tr. 50.

At the hearing, Plaintiff testified that his last treatment for

his back was in late 2007 with David Hibbs, ARNP, but he also asserted that he had visited a doctor after 2008. Tr. 32-34; 41-42. No evidence of treatment in 2008 was included in the record.

While Plaintiff was living with his girlfriend, his daily activities included getting the kids ready for school, caring for three dogs, light housekeeping, and supervising the children when they were home from school. Tr. 130; 139.

Plaintiff estimated he had been arrested between six and seven times. Tr. 21. Plaintiff testified that he was incarcerated in 2001 for selling cocaine in 1987. Tr. 39. He smokes four to five cigarettes per day. Tr. 194.

**ADMINISTRATIVE DECISION**

At step one, ALJ Duncan found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, and he had not engaged in substantial gainful activity since October 4, 2005, the onset date. Tr. 16. At step two, he found Plaintiff had the following severe impairments: right shoulder strain, mild degenerative changes in the lumbar spine; depression, and pain disorder due to psychological factors and general medical condition. Tr. 16. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Tr. 19. In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the Residual Functional Capacity ("RFC") findings. Tr. 21. The ALJ found that Plaintiff was unable to perform any past relevant work, and has the RFC to perform light work with the following

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

1   limitations:

2       He can stand and/or walk 4 hours in an 8-hour day.  He
        would require a sit/stand option hourly.  He can
3       occasionally engage in kneeling or crouching.  He should
        not climb ladders or work at heights.  He cannot work
4       overhead or reach out to the side.  He is capable of
        simple, routine work with superficial public contact.  He
5       should avoid routine interaction with others.  He requires
        independent work, not in coordination with coworkers.  He
6       should not work on a conveyor belt or do security work or
        be in charge of other's safety.  He would be absent about
7       8 hours a month for medical reasons.  He would be off task
        4% of a work day.

8

9   Tr. 20.

10      Finally, after considering Plaintiff's age, education, work

11  experience, and residual functional capacity, the ALJ concluded jobs

12  exist in significant numbers in the national economy that the

13  Plaintiff can perform, such as escort vehicle driver, charge account

14  clerk, and repair order clerk.  Tr. 23.

15                      **STANDARD OF REVIEW**

16      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

17  court set out the standard of review:

18      A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo. Harman v. Apfel*,
19      211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
        Commissioner may be reversed only if it is not supported
20      by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
21      Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance.  *Id.* at 1098.
22      Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
23      support a conclusion.  *Richardson v. Perales*, 402 U.S.
        389, 401 (1971).  If the evidence is susceptible to more
24      than one rational interpretation, the court may not
        substitute its judgment for that of the Commissioner.
25      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
        Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

26

27      The ALJ is responsible for determining credibility,
        resolving conflicts in medical testimony, and resolving
        ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
28      Cir. 1995).  The ALJ's determinations of law are reviewed

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

*de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the

claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by: (1) finding Plaintiff was not credible; (2) improperly rejecting lay witness testimony; and (3) failing to meet his Step 5 burden.   ECF No. 15 at 7. Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error.   ECF No. 17.

**DISCUSSION**

**A.   Credibility.**

Plaintiff contends that the ALJ failed to specifically identify what testimony was not credible, and failed to provide "clear and convincing" reasons for rejecting Plaintiff's subjective complaints. ECF No. 15 at 11-15.   Also, Plaintiff argues that the ALJ improperly rejected "the severity of Plaintiff's symptoms based upon the assertion that they were not supported by objective clinical findings."   ECF No. 15 at 14.   With regard to Plaintiff's pain testimony, the ALJ found that while Plaintiff's impairments could cause the alleged symptoms, the claimant's statements about the intensity, persistence and limiting effects of the symptoms was not credible.   Tr. 21.   As discussed below, the ALJ provided several "clear and convincing" reasons that supported the conclusion that Plaintiff lacked credibility.

As stated earlier, the ALJ is responsible for determining

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews*, 53 F.3d at 1039.  The ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  After a claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence.  *Reddick v. Chater,* 157 F.3d 715 (9th Cir. 1998).  *Bunnell v. Sullivan* 947 F.2d 341, 343 (9th Cir. 1991).  Unless affirmative evidence exists that shows that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)(internal quotation marks omitted); *Swenson*, 876 F.2d at 687.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  See, e.g., *Fair v. Bowen*, 885 F.2d 597, 602-04 (9th Cir. 1989).

In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13.  See *Bunnell*,

947 F.2d at 346.   Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom, precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities. See Social Security Ruling ("SSR") 88-13.

Plaintiff's argument that the ALJ did not specify which testimony was not credible lacks merit.   For example, as the ALJ found, after Plaintiff's injury, he was successfully treated and released to work for fourteen days of modified work, and after that he was medically released to return to work without restrictions. Tr. 21; Tr. 185.

Additionally, as the ALJ noted, no records existed that Plaintiff was treated for his pain after 2007.   Tr. 21.   The failure to seek treatment is a factor to consider in determining credibility.   *Fair*, 885 F.2d at 603 (while a number of good reasons exist for not seeking treatment, the claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony).

The ALJ also noted Dr. Seltzer's observation that Plaintiff's pain behavior appeared "suddenly" during the exam.   Tr. 21.   The relevant treatment notes stated:

> Examination of the right shoulder is marked by significant pain manifestation behavior, functional limitations, and grimaces, and complaints of pain which suddenly appeared during the examination.   There is no evidence of mechanical block to movement of the right shoulder.   The claimant guards because of complaints of pain.   I do not feel any instability present in his right shoulder.

> Overall, it is felt that strength in the right shoulder is
> 5/5.  I cannot localize any specific areas of weakness.
> Overall symmetry is within normal limits.  I do not see
> any atrophy or any signs of dysfunction of biceps or
> triceps.

Tr. 296.  Dr. Seltzer's note indicates that he found no physical objective impairment to substantiate Plaintiff's complaints of pain.

Finally, the ALJ noted that the objective findings establish Plaintiff has an injury that is usually treated conservatively with physical therapy or steroid shots.  Tr. 21.  On May 16, 2006, Plaintiff was examined by Alan Patterson, M.D., an orthopedist.  Tr. 236-40.  Dr. Peterson amended his report on June 5, 2006, after he reviewed an MRI completed on May 23, 2006.  Tr. 239-40.  Dr. Peterson noted that the MRI of the right shoulder was normal, diagnosis was sprain, with possible impingement syndrome.  Tr. 239-40.  Dr. Peterson opined that Plaintiff had reached his maximum medical improvement, and suffered from a two percent impairment of the upper extremity due to slight loss of internal rotation of the right shoulder.  Tr. 240.

A May 6, 2007, MRI of Plaintiff's lumbar spine revealed he had mild degenerative disc change with annular fissure at the L5-S1 and L2-3 levels.  Tr. 231.  On that same day, an MRI of Plaintiff's right shoulder revealed a small amount of fluid in the biceps tendon sheath, and a possible small tear or partial detachment of the labrum.  Tr. 232.  On September 12, 2007, S. Daniel Seltzer, M.D., agreed that Plaintiff's 2006 MRI of his right shoulder was "within normal limits" and Plaintiff should undergo MR arthrography to further evaluate his condition.  Tr. 301.

Finally, the ALJ noted that while Plaintiff testified he could sit for only 45 minutes at a time, and he had to lie down for two to

three hours per day, he never mentioned this to Dr. Ho or Dr. Williams, and he sat comfortably throughout the one hour, fifteen minute hearing.  Tr. 21.  As the ALJ points out, no evidence in the record supports Plaintiff's claim that he requires lying supine for two to three hours per day.  He neither related this information to his various medical providers, nor did his lay witness corroborate such a severe limitation.  An ALJ properly relies upon prior inconsistent statements related to symptoms.  *Smolen* v. *Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Therefore, the ALJ's conclusion that Plaintiff was not entirely credible was supported by substantial evidence in the record.

**B.   Lay Witness Testimony.**

Plaintiff contends that the ALJ erred by failing to provide "germane" reasons for rejecting the testimony of his lay witness and by erroneously finding that the testimony was consistent with the RFC.  ECF No. 15 at 15.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.  *Stout* v. *Comm'r Soc. Sec. Admin*., 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen*, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4) & (e), and 416(d)(4) & (e).  The ALJ may discount the testimony of lay witnesses only if he gives "reasons that are germane to each witness." *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 919); see also *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."

(citations omitted)).

The ALJ stated that he carefully considered the statement of Plaintiff's girlfriend, Naomi Patton. Tr. 21. The ALJ found that her statement was consistent with Plaintiff's RFC. Tr. 21. The ALJ noted that Ms. Patton's statement reflected Plaintiff's daily activities of taking kids to school, caring for pets, doing dishes, making dinner and light housekeeping. Tr. 21. Ms. Patton also noted that Plaintiff did not sleep well at night, no longer played basketball or socialized with friends due to his back, and he could not lift, and he could engage in only very limited sitting and standing. Tr. 21.

The majority of Ms. Patton's assertions about Plaintiff's limitations are compatible with Plaintiff's RFC. Ms. Patton's assertions that Plaintiff was unable to lift and sit or stand for only a few minutes at a time were unsupported by the record and were contradicted by Plaintiff's own testimony, and by the medical records. Tr. 44; 135; 197; 201; 235. Where the ALJ has properly discounted a claimant's subjective symptom testimony, the ALJ may subsequently reject lay witness testimony that is based, in part, on the same or similar subjective complaints. *See Valentine*, 574 F.3d at 694. The ALJ's failure to directly address and reject this portion of the lay witness testimony was harmless error because the unsupported assertions would not have changed the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). As a result, the ALJ did not err by implicitly rejecting this portion of Ms. Patton's testimony.

C.   **Step Five.**

Plaintiff contends that the ALJ erred by relying upon an

incomplete hypothetical that was posed to the VE.  ECF No. 15 at 10.
Specifically, Plaintiff argues the ALJ failed to provide a reason
for rejecting the state agency psychologist's opinion that he would
not be consistently on time for work and he would not have a good
attendance record.  ECF No. 15 at 10-11.

In December 2006, Rita Flanagan, Ph.D., assessed Plaintiff as
having no significant limitations, with the exception of a single
"moderate" limitation in the "ability to perform activities within
a schedule, maintain regular attendance, and be punctual within
customary tolerances."  Tr. 213.  About Plaintiff's functional
capacity assessment, Dr. Flanagan opined, "Muscle pain in his back
may limit his ability to be consistently on time or have good
attendance."  Tr. 215.  The ALJ did not specifically address Dr.
Flanagan's opinion.  Instead, the ALJ stated that the "opinions of
non-examining State Agency consultants . . . tend to support the
undersigned's conclusions, however, additional evidence was received
subsequent to their opinions, including testimony at the hearing,
making a new determination necessary in this case."  Tr. 22.

As a matter of law, more weight is given to a treating
physician's opinion than to that of a non-treating physician because
a treating physician "is employed to cure and has a greater
opportunity to know and observe the patient as an individual."
*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  A treating
physician's opinion, however, is not necessarily conclusive as to
either a physical condition or the ultimate issue of disability, and
can be rejected, whether or not that opinion is contradicted.
*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a
treating or examining physician, the ALJ must give "clear and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

convincing" reasons for doing so if the opinion is not contradicted by other evidence, and "specific" and "legitimate" reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions: "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The ALJ's conclusions must be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In this case, the ALJ failed to explain the weight given to the medical sources and failed to provide specific and legitimate reasons for rejecting Dr. Flanagan's assessment about Plaintiff's limited ability to work consistently and arrive timely. The ALJ stated simply that the opinions of the non-examining consultants tended to support his conclusions, but "additional evidence,"

including testimony at the hearing, required a "new determination" be made.   Tr. 22.   The ALJ failed to individually address the medical opinions, and he failed to specify, other than the hearing testimony, the evidence that necessitated a new determination.   The ALJ's lack of specificity in his decision precludes the court from ascertaining, with certainty, the ALJ's rationale.   See *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").   In assessing a claimant's residual functional capacity, an ALJ must consider and evaluate the opinions of state agency physicians or psychologists using all factors set forth in the regulations for analyzing opinion evidence.   SSR 96-6p. The ALJ did not do so here and the reasoning provided was vague and did not contain specific and legitimate reasons.   Consequently, the ALJ erred in failing to address, and by implicitly rejecting, Dr. Flanagan's opinion about Plaintiff's limitations.   Given the deficient nature of the ALJ's opinion, this case must be remanded for further proceedings.   On remand, the ALJ shall discuss Plaintiff's limitations and specifically explain the weight given to all medical source opinions. The ALJ should also gather additional medical evidence, if necessary, to evaluate Plaintiff's limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

**CONCLUSION**

Based on the foregoing, the court finds that the ALJ's decision is not free of legal error and is not supported by substantial evidence. The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

1    Accordingly,

2         **IT IS ORDERED:**

3         1.   Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is

4    **GRANTED** and the matter is **REMANDED** to the Commissioner for

5    additional proceedings.

6         2.   Defendant's Motion for Summary Judgment, **ECF No. 16**, is

7    **DENIED**;

8         3.   An application for attorney fees may be filed by separate

9    motion.

10        The District Court Executive is directed to file this Order and

11   provide a copy to counsel for Plaintiff and Defendant. Judgment

12   shall be entered for Plaintiff, and the file shall be **CLOSED**.

13        DATED December 13, 2012.

14

15              _____S/ CYNTHIA IMBROGNO_____
                UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 15